EVANDER, J.
Marcus Reed was convicted, after a jury trial, of possession of a firearm by a convicted felon[1] and carrying a concealed firearm.[2] He raises two issues on appeal. First, Reed contends that the trial court erred in denying his pretrial motion to suppress. Second, he argues that the trial court abused its discretion in permitting “impeachment” testimony from a former venire person. On appeal, the State acknowledges that the testimony from the former venire person should not have been allowed, but argues that the error was harmless. We reverse.
The evidence below reflects that on the afternoon in question, law enforcement officers were engaged in an operation directed to narcotics activity occurring at a certain Orlando location. While hidden, two deputies observed what they believed to be an illegal drug transaction. One of the deputies radioed Deputy Nelson who was nearby in a marked police vehicle. Deputy Nelson was informed by his fellow officer that a black male wearing all black clothing had just purchased drugs and was traveling southbound on a “pink-colored style” bike. Within a minute thereafter, Deputy Nelson stopped an individual (Reed) who met the general description[3] given by his fellow officer.
Immediately upon being stopped, Reed informed Deputy Nelson that he had a firearm in his right front pants pocket. After Deputy Nelson had secured the weapon, Reed advised the deputy that he had taken the gun from two children. Upon learning that Reed was a convicted felon, Deputy Nelson did not attempt to locate and/or interview the children from whom Reed allegedly took the gun. No drugs were found on Reed and it was subsequently determined that Reed was not the individual who had been observed in the purported drug transaction.
After an evidentiary hearing, Reed’s motion to suppress was denied[4] and the case *971 proceeded to trial. During a recess from jury selection in the first scheduled trial, venire person Anthony Ousley overheard Reed tell a female companion, “we ain’t going to say that, we are going to say he drawed [sic] it.” Ousley was apparently of the belief that Reed intended to lie on the stand. The trial court struck the venire and rescheduled the trial.
Prior to the commencement of the second trial, Reed sought to have Ousley’s anticipated testimony excluded. Reed correctly argued that Ousley did not know the context in which the alleged statement was made and that it was speculative for Ous-ley to believe that Reed was “going to fabricate something on the stand.” The prosecutor disagreed, arguing:
So, it’s the State’s position that if someone says they’re going to lie on the stand, then that needs to be brought to the jury’s attention.
The trial court ruled that should Reed testify, the State would be permitted to introduce Ousley’s testimony. In response to defense counsel’s argument that it was impossible to put Reed’s statement in context, the trial judge opined:
It’s not impossible, when you take into account this man was sitting in the gallery, was part of the jury selection process in the first trial, saw the defendant sitting up here, heard the charges read on the record, and this statement and the quoted text in the statement, in the light of that context, is perfectly clear, and I am going to deny the defense’s motion in limine with regard to this statement.
The State called only Deputy Nelson during its ease in chief. During cross-examination, Deputy Nelson acknowledged that Reed had been fully cooperative during the stop and had told him that he [Reed] had taken the gun from some children for their safety.
After the State rested, Reed testified. He claimed that while riding his bicycle he observed a man, who was running through a nearby field, discard a gun. According to Reed, some young children (who appeared to be approximately ten years of age) began to approach the discarded weapon. Reed testified that he seized the gun with the intent of bringing it to Vivian Adams — a family friend who was employed by the Orange County Sheriffs Department. Reed further testified that he was on his way to Adams’ residence when he was stopped by Deputy Nelson. The defense also called Vivian Adams. Adams confirmed that she had been employed by the Orange County Sheriffs Department for twenty-eight years, that she resided in the area, and that she was a family friend of Reed. Adams opined, based on her firearms safety training, that young children are often drawn to guns.
After the defense rested, the State called Ousley as a rebuttal witness. The State was permitted, over objection, to have Ousley testify as to the statement he had overheard Reed make during jury se *972 lection at the first scheduled trial. Ousley acknowledged that he did not hear the context of the entire conversation, but stated: “knowing what I heard ... I didn’t feel that I could be a good juror.”
During oral argument, the State’s counsel admirably conceded that the trial court erred in permitting Ousley’s testimony. However, it was the State’s position that because Ousley’s testimony was so clearly irrelevant, it was highly unlikely that the jury gave it any weight and, thus, the error was harmless. We reject this argument. The record below reflects that the prosecutor, defense counsel, and trial judge all believed that Ousley’s testimony would, at a minimum, imply to the jury that Reed intended to lie at his first trial. In the instant case, Reed’s primary defense was “necessity.”[5] The defense’s effort to establish this defense was based almost exclusively on Reed’s testimony. Given that Reed’s necessity defense hinged on the credibility of his testimony, we cannot conclude that the error was harmless.
REVERSED and REMANDED.
ORFINGER, C.J. and COHEN, J., concur.

. § 790.23(l)(a), Fla. Stat (2009).

. § 790.01(2), Fla. Stat. (2009).

. Deputy Nelson did admit that Reed’s bicycle was more purple than pink.

.Based on the evidence presented at the suppression hearing, we find no error in the trial court's denial of Reed’s motion. However, subsequent to the date of Reed's trial, the Florida Supreme Court rendered a decision holding "that the fellow officer rule does not allow an officer who does not have firsthand *971 knowledge of the traffic stop ... to testify as to hearsay regarding what the initial officer who conducted the stop told him or her for the purpose of proving a violation of the traffic law so as to establish the validity of the initial stop.” State v. Bowers, 87 So.3d 704 (Fla. 2012). Although factually distinguishable, we believe that Bowers is applicable to the instant case. At the suppression hearing, the State did not present the testimony of any officer who had actually observed the purported illegal drug activity. Instead, Deputy Nelson testified, without objection, to his fellow officer’s alleged observations of a drug transaction involving an individual whose description was the basis for Reed’s stop. In light of the Bowers decision, the defendant should be allowed to seek another evidentiary hearing on the motion to suppress.

. The essential elements of the defense of “necessity” are: (1) the defendant reasonably believed that his action was necessary to avoid an imminent threat of danger or serious bodily injury to himself or others, (2) the defendant did not intentionally or recklessly place himself in a situation in which it would be probable that he would be forced to choose the criminal conduct, (3) there existed no other adequate means to avoid the threatened harm except the criminal conduct, (4) the harm sought to be avoided was more egregious than the criminal conduct perpetrated to avoid it, and (5) the defendant ceased the criminal conduct as soon as the necessity or apparent necessity for it ended. Bozeman v. State, 714 So.2d 570, 572 (Fla. 1st DCA 1998); see also Butler v. State, 14 So.3d 269, 270-71 (Fla. 1st DCA 2009). The jury was appropriately instructed on the necessity defense in accordance with Florida Standard Jury Instruction 3.6(k).